CHARLES D. MORROW, APPELLANT, V. ALEXANDER LAVERTY, APPELLEE.

FILED OCTOBER 4, 1906. No. 14,426.

1. Evidence examined, and *held* not only to support, but to require the judgment appealed from.

2. Verdict: EVIDENCE: REVIEW. Where the verdict returned is the only one which could be sustained under the evidence, errors assigned in giving or refusing instructions will not be discussed.

APPEAL from the district court for York county: ARTHUR J. EVANS, JUDGE. *Affirmed.*

*France & France* and *Meeker & Wray,* for appellant.

*Hainer & Smith* and *F. C. Power, contra.*

DUFFIE, C.

In 1901 the plaintiff and appellant was the owner of a stock of drugs, together with the store fixtures, located in a building in the town of Ashland, Nebraska. The defendant and appellee owned a quarter section of land in Sherman county, Nebraska, upon which were certain improvements. At that time both parties resided in Ashland, and on the 29th of March, 1901, the plaintiff traded his drug stock and store fixtures to the defendant for the Sherman county land, giving a mortgage on the land for $568 as boot money. In August, 1903, plaintiff brought this action against the defendant in York county, where service was obtained, alleging in his petition that the defendant fraudulently misrepresented the value of the land, the nature and value of the improvements thereon, and the

rental value thereof. He further alleges that, while the defendant represented the land to be worth $23 an acre, its fair market value did not exceed $900; that its rental value was not more than $50 per annum, while the defendant represented it to be $200; that his stock of goods and fixtures were worth $4,000, and that he has been damaged by the false and fraudulent representations of the defendant, upon which he relied in making the exchange, in the sum of $3,668, for which sum he prays judgment. His petition further states that at the time of making the trade, and for some time previous thereto, he was addicted to the use of intoxicating liquors to such an extent as to be greatly weakened in mind and body, and that he had no reasonable or adequate comprehension of the nature of the transaction, of which the defendant had knowledge and took advantage. The answer, after admitting the trade as alleged by plaintiff, asserts that, prior to the exchange, the plaintiff made a personal examination of the Sherman county land and fully acquainted himself with the situation, character and value thereof and the improvements thereon, and had full and actual knowledge thereof; that he had taken possession thereof and, until a short time before commencing the suit, had collected the rents, issues and profits therefrom, and had then sold the same. The answer further contains a general denial of all facts alleged in the petition and not admitted in the answer. For reply, the plaintiff admits that he visited the land prior to the trade, but says that he was in such an enfeebled condition from the excessive use of intoxicating liquors that he was unable to comprehend the situation, character or value of the land or the improvements thereon. A trial to a jury resulted in a verdict for the defendant, upon which the district court entered judgment, and the plaintiff has appealed to this court.

The evidence is quite voluminous, but may be epitomized as follows: The plaintiff, who is a physician, came to Ashland sometime in the fall of 1900, and purchased a drug store from one Hull. About two months prior to the

trade in question he was married and set up housekeeping. Harry Hull and R. Overton were his clerks in the drug business. Neither of the clerks were called to show excessive drinking by the plaintiff, and the only witnesses offered on that question having personal knowledge of the fact were the plaintiff himself and his two sisters, neither of whom were in Ashland after the early part of March, 1901, and but a short time prior to that date. The sisters testified that he was drinking heavily, and gave it as their opinion that as a result he was incapacitated from doing business. The plaintiff himself testified that for some time prior to the trade he had been drinking to excess and that he "was weakened both physically and mentally in that way"; at the same time he admits that he did all the buying for his store up to the time of the trade, that he waited on customers, and attended generally to the business. It is conceded that prior to the trade he accompanied the defendant on a visit to the land, and had every opportunity to examine it and to inspect the improvements thereon. Relating to this trip the plaintiff himself testified as follows: "I haven't any recollection of seeing this land. I remember we started for the land, but I never knew where we got to or when we came back. About the only thing I remember was that I was in a caboose and that I was very sick; that is about the only recollection I have of the trip." In order to visit the land the parties went by train from Ashland to Lincoln, from Lincoln to Litchfield, and from there by wagon to the land in question, a total distance of about 170 miles. The defendant, who was with him during the whole trip, says that he was perfectly sober during the time; that they had no liquors with them; that they drove from Litchfield to the land, drove over it, made an examination of the land, then drove to the house, the plaintiff going in, remaining some time, after which they drove back to Litchfield, got a hasty supper and, as the passenger train east did not stop at that station, took a freight train to Ravenna where they boarded the passenger sometime about midnight, getting

back to Ashland the next morning. Dr. Meredith, a resident of Ashland, went to Lincoln on the same train with Morrow and Laverty on their trip out to see the land. He conversed with the plaintiff, who told him that "he was on his way to look at a piece of land he was about to trade his drug stock for, * * * that if the land was what he expected he was going to trade. * * * He was not intoxicated; there was no indication of intoxication." George Rightnour, a tenant on the land in question, testified that Morrow and Laverty came to the land in a buggy; that they drove over the farm after which they drove to the house where the plaintiff alighted, went into the house and remained some time; that he made inquiries about the soil, its productiveness, and other general inquiries about the farm. Questioned about the plaintiff's condition as to sobriety, he said he did not observe any evidence of intoxication, that his walk was "sober and straight" and his conversation intelligent. The next morning after returning from Sherman county the trade was made. The papers evidencing the transfer were drawn by H. A. Wiggenhorn, president of the Farmers & Merchants Bank of Ashland, and executed by the parties in the waiting room of the bank. Mr. Wiggenhorn states that, so far as he observed, the plaintiff was perfectly sober, that he saw nothing unusual about him, and that his conversation was perfectly rational.

Aside from the improbability of a person being so much under the influence of liquor, or so weakened physically and mentally by its use as to be unconscious of his doings and surroundings for a period of 48 hours, the fact that during that time he made a journey by railroad and wagon of more than 300 miles, without such condition attracting the attention of those with whom he came in contact and conversed, is ground amply sufficient to warrant a finding by the jury against the truth of his contention. If, as admitted, the plaintiff visited and examined the farm for which he traded, and if, as found by the jury, he was in condition to know and comprehend the

business upon which he was engaged, then, as said by the trial court in his instructions to the jury, it will be presumed that he acted upon his own judgment of the character and value of the land and improvements thereon, instead of the representations made by the defendant.

Complaint is made of certain rulings of the court in refusing evidence offered by the plaintiff, and the admission of evidence offered by the defendant. Certain of the instructions to the jury were also excepted to by the plaintiff. A discussion of these assignments would be of no benefit to the profession. A careful reading of the whole record produces an abiding conviction that the verdict returned by the jury is the only one which a court could sustain, and, this being the case, the errors complained of in the instructions, if error there was, are without prejudice and immaterial.

We recommend an affirmance of the judgment.

ALBERT, C., concurs.

JACKSON, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.